*Formatted for Electronic Distribution*                                                          *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

In re:

    **Jean Ann LaVictoire,**                              Chapter 13 Case
            Debtor.                                      # 10-10076

_____

In re:

    **Ronald Joseph LaVictoire,**                        Chapter 13 Case
            Debtor.                                      # 10-10325

_____

Filed & Entered
On Docket
March 29, 2011

Appearances:  Rebecca A. Rice, Esq.       Andre D. Bouffard, Esq.         Jan M. Sensenich, Esq.
              Cohen & Rice                 Downs Rachlin Martin PLLC      Norwich, VT
              Rutland, VT                  Burlington, VT                 Chapter 13 Trustee
              For the Debtors              For TD Bank N.A.

### MEMORANDUM OF DECISION
### GRANTING THE DEBTORS' MOTIONS TO AVOID JUDICIAL LIEN,
### OVERRULING IN PART AND SUSTAINING IN PART THE BANK'S OBJECTIONS TO CONFIRMATION,
### AND SETTING REMAINING OBJECTION ISSUE FOR CONTINUED CONFIRMATION HEARINGS

The Debtors, who are mother and son and who have filed separate bankruptcy cases, seek to partially avoid the judicial lien of TD Bank N.A. (the "Bank") on property they co-own as joint tenants with right of survivorship. The Bank objects to the motions to avoid lien, asserting that the Debtors undervalue the property and are not entitled to a homestead exemption greater than the exemption in effect on the date the Bank obtained its judgment. The Bank also objects to the Debtors' treatment of the Bank's claim in their chapter 13 plans. For the reasons set forth below, the Court grants the Debtors' motions to avoid lien and overrules the Bank's objections to the Debtors' motions, overrules in part and sustains in part the Bank's objections to confirmation of the Debtors' chapter 13 plans, and sets the remaining objection issue for hearing at continued confirmation hearings.

### JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334 and declares them to be core proceedings pursuant to 28 U.S.C. § 157(B)(2)(K) and (L).

### PROCEDURAL HISTORY

Debtor Jean Ann LaVictoire filed her chapter 13 plan on February 18, 2010 (# 10-10076, doc. # 11), and Debtor Ronald Joseph LaVictoire filed his chapter 13 plan on April 1, 2010 (# 10-10325, doc. # 14). The Bank filed objections to both chapter 13 plans (# 10-10076, doc. # 18; # 10-10325, doc. # 21).

1

On May 25, 2010, the Debtors filed motions to avoid the judicial lien of TD Bank in both cases, on the ground that the lien impaired their homestead exemption, pursuant to 11 U.S.C. § 522(f)[1] (# 10-10076, doc. # 24; # 10-10325, doc. # 22). The Debtors filed amended chapter 13 plans on May 26, 2010 (# 10-10076, doc. # 25; # 10-10325, doc. # 24). The Bank filed objections to the motions to avoid lien on June 9, 2010 (# 10-10076, doc. # 26; # 10-10325, doc. # 25).

On July 20, 2010, the Debtors filed memoranda of law in support of their motions to avoid lien (# 10-10076, doc. # 30; # 10-10325, doc. # 29) and in support of confirmation of their chapter 13 plans (# 10-10076, doc. # 31; # 10-10325, doc. # 30). The Bank filed memoranda of law in opposition to the motions to avoid lien (# 10-10076, doc. # 32; # 10-10325, doc. # 31) and in opposition to confirmation of the Debtors' amended chapter 13 plans (# 10-10076, doc. # 33; # 10-10325, doc. # 32) on August 4, 2010. On August 15, 2010, the chapter 13 Trustee filed a memorandum of law in support of the Debtors' motions to avoid lien (# 10-10076, doc. # 35). On October 25, 2010, the Debtors filed a reply memorandum in both cases in opposition to the Bank's objections to confirmation of the amended chapter 13 plans (# 10-10076, doc. # 52; # 10-10325, doc. # 49).

FINDINGS OF FACT

Based upon the record in these two cases, the Court makes the following findings of fact:

1. In 1974 and 1986, Debtor Jean Ann LaVictoire and her husband, Henry LaVictoire, acquired property located at 3337 Walker Mountain Road, in Clarendon, Vermont, by three separate deeds (the "Property"); the Property has since been combined into one parcel.
2. In 1997, Henry LaVictoire died.
3. On April 6, 2001, Debtor Jean Ann LaVictoire conveyed an undivided one-half interest in the Property to her son, Debtor Ronald Joseph LaVictoire, as joint tenants with right of survivorship.
4. The Property has been both Debtors' primary residence since prior to 2001.
5. In April 2003, LaVictoire Drilling and Blasting, Inc. borrowed funds from the Bank for the operation of its business; the Debtors personally guaranteed repayment of the loan.
6. On March 29, 2006, the Bank obtained a judgment against the Debtors on the Property in the amount of $187,228.56;[2] the balance owed was $273,448.98 as of Debtor Jean Ann LaVictoire's

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

[2] The Bank also holds a secured claim against the Debtors' interest in additional property located in Rutland, Vermont. Neither the Debtors nor the Bank have presented any issue with respect to the Rutland property; accordingly, the Court addresses herein only the judgment debt secured by the Clarendon property.

2

date of filing, and $276,218.73 as of Debtor Ronald Joseph LaVictoire's date of filing.[3]

7. On January 25, 2010, Debtor Jean Ann LaVictoire filed a voluntary chapter 13 petition.

8. On March 11, 2010, Debtor Ronald Joseph LaVictoire filed a voluntary chapter 13 petition.

9. As of Mrs. LaVictoire's date of filing, there were real estate taxes owed in the amount of $7,268.24, which are a lien on the Property; Mrs. LaVictoire's chapter 13 plan proposes to pay 100% of the taxes, plus interest.[4]

DISCUSSION

The Court will first address the Debtors' motions to avoid lien and then turn to the Bank's objections to confirmation of the Debtors' amended chapter 13 plans.

**I.    The Debtors' Motions to Avoid Lien**

The Debtors' motions to avoid lien, and the Bank's objections thereto, present two issues: A) whether the Debtors are bound by the valuation of the Property listed in the foreclosure judgment and their bankruptcy schedules, or whether the value listed in the Debtors' more recent appraisal controls; and B) whether the applicable exemption statute is the one in effect on the date of the foreclosure judgment or the one in effect as of the date of the Debtors' bankruptcy filings.[5]

   *A.    The Value Listed in the Debtors' Appraisal Controls*

The Debtors' motions to avoid lien assert that, on the date of the Debtors' bankruptcy filings, the Property had a fair market value of $175,000 (# 10-10076, doc. # 24; # 10-10325, doc. # 22). The Debtors attach to their motions to avoid lien copies of an April 21, 2010 appraisal valuing the Property at $175,000 (# 10-10076, doc. # 24-1; # 10-10325, doc. # 22-2). The Bank objects to this valuation of the Property, asserting in its opposition papers that the state court determined the value of the Property to be $190,000 as part of the foreclosure proceedings, and that the Debtors adopted this valuation of the

---

[3] The Bank obtained a judgment and decree of foreclosure in 2009, which provided that the total sum that the Debtors owed the Bank was $258,492.33 plus per diem interest of $61.55 commencing on May 27, 2009 (# 10-10076, doc. # 18-2; # 10-10325, doc. # 21-2). The Court arrived at the balance owed as of the filing dates by multiplying the $61.55 per diem interest by the number of days from May 27, 2009, to the Debtors' respective filing dates (243 days for Mrs. LaVictoire; 288 days for Mr. LaVictoire), and adding the total ($14,956.65 for Mrs. LaVictoire; $17,726.40 for Mr. LaVictoire) to the $258,492.33 judgment amount.

[4] Mrs. LaVictoire states that the tax lien is in the amount of $8,171.15 in her motion (# 10-10076, doc. # 24), which appears to be based on the total principal and interest to be paid on the lien through her amended plan (# 10-10076, doc. # 25). However, this figure exceeds the amount of the lien as of the date of filing as listed on Schedule D (# 10-10076, doc. # 1, p. 13).

[5] The Bank also objects to the Debtors' motions to avoid lien on the basis that the Debtors had not claimed the Property as exempt in Schedule C to their bankruptcy petitions. However, the Debtors both filed an amended Schedule C on June 16, 2010, in which each claimed the Property as exempt in the amount of $62,500 pursuant to 27 V.S.A. § 101, and exempt in the additional amount of $7,300 pursuant to 12 V.S.A. § 2740(7) (# 10-10076, doc. # 29; # 10-10325, doc. # 28). Accordingly, the Bank's objection on that basis is overruled.

3

Property in Schedule A to their bankruptcy petitions (# 10-10076, doc. # 26; # 10-10325, doc. # 25). The Debtors both filed an amended Schedule A on June 16, 2010, in which each listed the value of their one-half interest in the Property as $87,500 (# 10-10076, doc. # 28; # 10-10325, doc. # 27), based upon an appraisal showing the total value of the Property to be $175,000.

Under the Federal Rules of Bankruptcy Procedure, "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Courts have no discretion to reject amendments unless a debtor has acted in bad faith or concealed property, or the amendment would prejudice creditors. See Suggitt v. French (In re French), 2003 Bankr. LEXIS 908, *8, 2003 WL 21288644, *2 (Bankr. D. Vt. May 30, 2003) ("a debtor has an absolute right to amend his or her schedules") (citing In re Blaise, 116 B.R. 398, 400 (Bankr. D. Vt. 1990) ("by its terms Rule 1009 liberally entitles a debtor to amend at any time before the case is closed")); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132 (2d Cir. 1994) (affirming decision emphasizing that Rule 1009(a) right to amend can only be exercised when there is no issue of bad faith or prejudicial reliance).

The Bank has not articulated any bad faith by the Debtors or prejudicial reliance that would preclude the Debtors from amending Schedule A to reflect the appraisal obtained on April 21, 2010. Further, the appraisal is entitled to a presumption of reliability as it provides an objective statement of value based upon an expert's examination of the Property shortly after the petitions were filed. The Bank has not presented any evidence to rebut that presumption, such as a competing appraisal, nor has it raised any specific objections to the content, analysis, or conclusions set forth in the appraisal upon which the Debtors rely. Additionally, the Bank has not offered any basis upon which the Court should find either that the property value set forth in the foreclosure decree is a more accurate indication of the Property's actual value on the date of the petition or that the Debtors should be bound by that figure. Accordingly, the Court finds that the $175,000 value of the Property listed in the Debtors' appraisal and amended Schedule A to the Debtors' bankruptcy petitions controls. Thus, for purposes of this chapter 13 case and the instant motions to avoid lien, the Court finds that the fair market value of the Property is $175,000, and that each Debtor has an undivided one-half interest in the Property worth $87,500.

    B. *The Exemption Statue Applies as it Existed on the Date of the Debtors' Bankruptcy Filings*

The Debtors each claim the Property as exempt in the total amount of $69,800 (# 10-10076, doc. # 24; # 10-10325, doc. # 22), composed of a homestead exemption in the amount of $62,500 pursuant to 27 V.S.A. § 101, and an additional wildcard exemption in the amount of $7,300 pursuant to 12 V.S.A. §

4

2740(7) (# 10-10076, doc. # 29; # 10-10325, doc. # 28).  The Bank objects to the amount of each claimed homestead exemption, arguing that the maximum homestead exemption the Debtors could claim is $37,500, i.e., one-half the homestead exemption available pursuant to 27 V.S.A. § 101 when the Bank's judgment lien attached to the Property on March 29, 2006 (# 10-10076, doc. # 26; # 10-10325, doc. # 25). The Debtors each argue that they are entitled to a homestead exemption in the amount of $62,500, one-half of the amount available pursuant to 27 V.S.A. § 101 on the date of the Debtors' respective bankruptcy filings in 2010 (# 10-10076, doc. # 30; # 10-10325, doc. # 29).

The commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Under § 522(b), "a debtor may be able to exempt property which allows the debtor to withdraw that property from property of the estate."  In re Little, 2006 Bankr. LEXIS 1010, *6–7, 2006 WL 1524594, *2 (Bankr. N.D.N.Y. Apr. 24, 2006).  Vermont has not "opted out" of the federal exemption scheme set forth in § 522(d) and, as such, debtors in Vermont may choose between either the § 522(d) exemptions or the exemptions available under applicable state law.  See Collier on Bankruptcy ¶ 522.01, n.2 (2011).  Where debtors choose the exemptions available under Vermont state law, such "[d]ebtors may exempt 'any property that is exempt under . . . State or local law that is **applicable** on the date of the filing of the petition.'"  CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253, 258–59 (2d Cir. 2009) (quoting 11 U.S.C. § 522(b)(3)(A)) (emphasis added).  "Thus, while federal law governs the date on which the exemption comes into play, [State] law governs the **nature and scope** of the exemption."  Id. at 259 (emphasis added).  The Second Circuit in CFCU articulates what is essentially a two-part analysis concerning first the "nature and scope" of an exemption under state law, i.e., whether the property may be properly claimed as exempt, and second the "applicability," i.e., the amount, of the exemption under § 522.  This Court will address each of the two parts of the analysis before turning to the interplay between CFCU and two cases from this Court, In re Skjetne, 213 B.R. 274 (Bankr. D. Vt. 1997) (Conrad, J.), and In re Lewis, 400 B.R. 417 (Bankr. D. Vt. 2009), which the Court finds to be consistent with each other and with this Court's analysis in the instant decision.

    1.    State Law Determines Whether the Property May be Properly Claimed as Exempt

The first part in this two-part analysis is that state law determines the "nature and scope" of the exemption, i.e., whether the property may be properly claimed as exempt.  See CFCU, 552 F.3d at 259; see also Lewis, 400 B.R. at 420 ("When a Vermont debtor chooses state court exemptions, the **scope** of such exemptions, as pointed out by CFCU, is determined by state law") (emphasis in original).

5

27 V.S.A. § 101 provides that:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $ 125,000.00 in value, and **owned and used or kept by such person as a homestead** together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101 (emphasis added). In order to properly claim the homestead exemption, "there must be both ownership and occupation of the [property]." In re Avery, 41 B.R. 224, 226 (Bankr. D. Vt. 1984) (Marro, J.).

Here, the Debtors each have an undivided one-half interest in the Property as joint tenants with right of survivorship, and have lived at the Property as their primary residence since prior to 2001 (see Findings of Fact ¶¶ 1–4, supra). The Debtors have claimed the Property as exempt on amended Schedule C (# 10-10076, doc. # 29; # 10-10325, doc. # 28). Further, the Bank does not dispute that the Debtors are entitled to claim the homestead exemption (# 10-10076, doc. ## 26, 32; # 10-10325, doc. ## 25, 31). Accordingly, the Court finds that the Debtors are entitled to claim the Property as exempt under 27 V.S.A. § 101.

        2.    <u>Bankruptcy Law Sets the Date for Determining Which Exemption Statute Applies</u>

Once the property in question is found to be exempt pursuant to state law, § 522 mandates that the "applicable" exemption is the exemption statute as it existed on the date of the filing of the debtor's bankruptcy petition, as "federal law governs the date on which the exemption comes into play." CFCU, 552 F.3d at 259. "Because § 522(c) only applies to exempt property, there is no conflict in recognizing that state law may render property nonexempt to particular claims. As to such nonexempt property, § 522(c) never comes into effect." Lewis, 400 B.R. at 419. Conversely, once the property is found to have been properly claimed as exempt pursuant to state law in the first part of the two-part analysis, § 522 does come into effect.

Section 522 provides, in relevant part, that:

(b)    (1)    . . . an individual debtor may exempt . . .
. . .
        (3)
            (A)    . . . any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition . . ..
. . .
(c)    Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . ..

6

11 U.S.C. § 522(b) and (c).

Having found that the Debtors are entitled to claim the Property as exempt under 27 V.S.A. § 101 (see § I.B.1, supra), § 522 makes clear that the "applicable" exemption is the exemption statute as it existed on the Debtors' respective petition dates. See Skjetne, 213 B.R. at 278 (finding that increased homestead exemption available on filing date applied to debtors in bankruptcy pursuant to § 522). Here, the Debtors filed their separate chapter 13 bankruptcy petitions on January 25, 2010, and on March 11, 2010 (see Findings of Fact, ¶¶ 7–8, supra). The Vermont homestead exemption statute, 27 V.S.A. § 101, was most recently amended in 2009 to increase the homestead exemption from $75,000 to $125,000. The increased homestead exemption of $125,000 was in effect on the Debtors' respective filing dates, and is thus applicable under § 522. See Skjetne, 213 B.R. at 278. Accordingly, the Court finds that the Debtors are each entitled to claim a homestead exemption in the amount of $62,500, for a total homestead exemption in the amount of $125,000.

        3.    CFCU, Skjetne, and Lewis are Consistent with Each Other and with This Decision

Interestingly, both parties cite CFCU, Skjetne, and Lewis as germane to the instant decision and to support their respective positions. Due in part to the choice of words used in CFCU – "nature and scope" vs. "applicability" – and as a result of the distinct procedural postures and very different factual and legal issues presented in those three cases, it is not surprising that the parties advocate reliance upon their holdings to support contrary findings. However, a careful reading of CFCU, Skjetne, and Lewis reveals that they are consistent with each other and with the Court's analysis in the instant decision.

In Skjetne, the earliest of the three cases, the amount of the homestead exemption available on the debtors' petition date was greater than was permitted by the homestead exemption available when most of the creditors' claims were incurred; the trustee objected to the debtors' claim of the higher homestead exemption. Skjetne, 213 B.R. at 275. Judge Conrad found that, under 1 V.S.A. § 214(b), state law prohibited debtors from applying the Vermont homestead exemption retroactively against creditors whose claims arose prior to the effective date of the amendment. Id. at 277. The court went on to find, however, that a debtor who filed a bankruptcy case could claim the higher exemption created in the amended statute because § 522 of the Bankruptcy Code explicitly permits debtors to claim the homestead exemption in effect on the date of filing. Id. at 277–78. Applying Skjetne and the plain meaning of § 522 here, the Court must find that § 522 controls and entitles the Debtors to claim the homestead exemption that was in effect on the dates the Debtors filed their respective bankruptcy petitions.

7

In January 2009, the Second Circuit addressed in the CFCU case a homestead exemption question much like that raised in Skjetne, this time examining whether New York's homestead exemption statute, N.Y. C.P.L.R. § 5206, could be applied retroactively. CFCU, 552 F.3d at 256. The Second Circuit found that, under New York law, this amended exemption statute did apply retroactively. Id. at 256–57, 262–65. Since the state law already authorized retroactive application, there was no need to reach the question of whether § 522(c) would expand the homestead exemption to the amount of the more recent version of the statute, as was before the court in Skjetne. Although it did not specifically analyze the impact of § 522, the Second Circuit in CFCU held that "a New York debtor's ability to invoke the increased homestead exemption is determined not by the date the debtor's unsecured contract debt was incurred, but rather, by the date upon which the debtor files his or her bankruptcy petition." Id. at 265. Given that Skjetne concerned a prospective statute and CFCU concerned a retroactive one, comparing the analysis of the two cases is to some extent like comparing apples and oranges. However, what the two decisions have in common is the conclusion that, under § 522, it is the terms of the exemption in effect on the date of filing that determines the extent to which a debtor may exempt property from execution by creditors in a bankruptcy case.

In Lewis, the most recent of the three cases, the creditor objected to the debtor's claimed homestead exemption under 27 V.S.A. § 107, based on the fact that the creditor's claim predated the debtor's acquisition of the homestead. Lewis, 400 B.R. at 418. The debtor argued that § 522(c) insulated her homestead from enforcement of the creditor's judgment. Id. The Court found that § 522(c) only applied to exempt property, there was no conflict in recognizing that state law may render property non-exempt to particular claims, and § 522(c) did not come into play at all because the property in question was not exempt under state law. Id. at 419. The Court further found that 27 V.S.A. § 107 explicitly limited the extent of the homestead exemption and sustained the creditor's objection. Id. at 420. The Court found the property would not be exempt under the first part of the two-part analysis articulated in CFCU, and thus there was no need to engage in the second part, i.e., the § 522 portion, of the analysis. By contrast, here, the Court found that the Debtors properly claimed the Property as exempt under state law (see § I.B.1, supra), and thus engaged in the second (§ 522) part of the analysis. In determining which version of the Vermont homestead exemption applies, the Court is bound by § 522 to declare that the Debtors are each entitled to claim a homestead exemption in the amount of one-half of the exemption in effect on the date of their bankruptcy filings in 2010, which is $62,500 (see § I.B.2, supra).

8

C.   *Calculation of the Debtors' Motions to Avoid Lien*

Having found that the fair market value of the Property is $175,000, each Debtor has an interest in the Property valued at $87,500 (see § I.A, supra), and the Debtors are each entitled to claim a homestead exemption in the amount of $62,500 (see § I.B, supra), the Court next turns to the calculation of lien avoidance to which each of the Debtors are entitled.

Section 522(f) provides, in relevant part, that:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (A)   a judicial lien . . ..
(2)
   (A)   For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
      (i)   the lien;
      (ii)  all other liens on the property; and
      (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
      exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(1) and (2).

With respect to Debtor Jean Ann LaVictoire, the § 522(f) calculation is as follows:

(i)   The Bank's judicial lien that Mrs. LaVictoire seeks to avoid had a balance in the amount of $273,448.98 as of the date of filing (see Findings of Fact, ¶ 6, supra).

(ii)  All other liens on the property include a tax lien in the amount of $7,268.24, which Mrs. LaVictoire is paying through her chapter 13 plan (see Findings of Fact, ¶ 9, supra).

(iii) Mrs. LaVictoire claims a homestead exemption in the amount of $62,500 (see § I.B.2, supra), and an additional wildcard exemption in the amount of $7,300 (see § I, n.3, supra), for a total exemption of $69,800.

The sum of these amounts is $350,517.22. The value of Mrs. LaVictoire's interest in the Property is $87,500 (see § I.A, supra). Since the sum of the amounts of the liens plus the exemption exceeds the value of Mrs. LaVictoire's interest in the Property by $263,017.22, the exemption is impaired to that extent. The lien is thus avoided to the extent of $263,017.22, unless Mrs. LaVictoire's case is dismissed, and remains intact as to her for the remaining balance of $10,431.76.

With respect to Debtor Ronald Joseph LaVictoire, the § 522(f) calculation is as follows:

(i)   The Bank's judicial lien that Mr. LaVictoire seeks to avoid had a balance in the amount of

9

      $276,218.73 as of the date of filing (see Findings of Fact, ¶ 6, supra).

 (ii)  There are no other liens on the Property, as Mr. LaVictoire did not list the tax lien in his motion to avoid lien because Mrs. LaVictoire is paying the property taxes through her chapter 13 plan (# 10-10325, doc. # 22).

 (iii)  Mr. LaVictoire claims a homestead exemption in the amount of $62,500 (see § I.B.2, supra), and an additional wildcard exemption in the amount of $7,300 (see § I, n.3, supra), for a total exemption of $69,800.

The sum of these amounts is $346,018.73. The value of Mr. LaVictoire's interest in the Property is $87,500 (see § I.A, supra). Since the sum of the amounts of the liens plus the exemption exceeds the value of Mr. LaVictoire's interest in the Property by $258,518.73, the exemption is impaired to that extent. Thus, the lien is avoided to the extent of $258,518.73, unless Mr. LaVictoire's case is dismissed, and remains intact as to him for the remaining balance of $17,700.

**II.** **The Bank's Objections to Confirmation**

  The Bank presents three additional objections to confirmation: A) Mr. LaVictoire lacks regular income to fund his plan as required by §§ 101(30) and 109(e); B) the amended plans fail to provide for interest on the Bank's claims as required by Till v. SCS Credit Corp., 541 U.S. 465 (2004); and C) the amended plans fail to pay provide for payment of the Bank's claims in equal monthly amounts as required by § 1325(a)(5)(B)(iii)(I).[6]

  *A.*  *Debtor Ronald Joseph LaVictoire has "Regular Income" under §§ 101(30) and 109(e)*

  Debtor Ronald Joseph LaVictoire lists his sole source of income on Schedule I of his bankruptcy petition to be income in the amount of $1,200 per month in "[o]ther monthly income," more specifically described as "Mother's social security" (# 10-10325, doc. # 1, p. 20). Debtor Jean Ann LaVictoire similarly lists on Schedule I of her bankruptcy petition income in the amount of $1,200 per month in "[s]ocial security or other government assistance" (# 10-10076, doc. # 1, p. 20). The Bank argues that Mrs. LaVictoire's gratuitous financial support, without any basis in binding legal obligation, is inadequate to satisfy the chapter 13 "regular income" requirement imposed by §§ 101(30) and 109(e) (# 10-10325, doc. # 21). See In re Fischel, 103 B.R. 44, 49 (Bankr. N.D.N.Y. 1989).

---

[6] The Bank also objects to confirmation on the basis that the amended plans "rel[y] upon an invalid assumption as to the extent to which the Debtor[s] can avoid the lien on the Debtor[s'] homestead securing [the Bank's] secured claim" (# 10-10076, doc. # 33; # 10-10325, doc. # 32). However, the Court found above that the Debtors are each entitled to claim a homestead exemption in the amount of $62,500 (see § I.B, supra). Accordingly, the Bank's objection to confirmation on that basis is overruled. Further, to the extent that the Bank objected to confirmation at the hearing held on June 17, 2010, on the basis that § 1322(b)(2) prohibits the Debtors from modifying the Bank's claims, the Bank failed to brief the issue in its memoranda of law in opposition to confirmation (# 10-10076, doc. # 33; # 10-10325, doc. # 32), and has thus waived the argument.

10

Section 101(30) defines the term "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30). Section 109(e) provides, in relevant part, that "[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). The court in Fischel found that the voluntary financial contribution of a non-debtor who lived with the debtor was insufficiently stable to meet the chapter 13 requirement. Fischel, 103 B.R. at 49. However, the court made its finding based upon the fact that the debtor and the non-debtor were neither related nor married, and because the record was silent as to the duration of their shared living arrangement. Id. (citations omitted).

Here, Mr. LaVictoire is receiving a contribution from his mother, an immediate family member, who is jointly liable on the debt to the Bank, and who has shared a primary residence with Mr. LaVictoire for over ten years (see Findings of Fact, ¶¶ 3–4, 6, supra). Based on these facts, the Court finds Mrs. LaVictoire's contribution to be sufficiently stable and regular to meet the chapter 13 "regular income" requirement imposed by §§ 101(30) and 109. See Fischel, 103 B.R. at 49; see also In re Campbell, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984) (finding contribution from family member who was jointly liable on debt was sufficiently stable and regular to conditionally confirm plan upon affidavit demonstrating commitment and ability). Accordingly, the Bank's objection based on lack of regular income is overruled.

  B. *The Amended Plans Fail to Provide for Payment of Interest at the Till Rate*

Debtor Jean Ann LaVictoire's amended plan provides that, inter alia, she shall pay $9,528.85 to the Bank at 0% interest, by payments through the plan of $158.81 per month for 60 months (# 10-10076, doc. # 25). Debtor Ronald Joseph LaVictoire's amended plan provides that, inter alia, he shall pay $17,700 to the Bank at 0% interest, by payments through the plan of $295 per month for 60 months (# 10-10325, doc. # 24). The Bank argues that the amended plans fail to provide for payment of interest on the Bank's claims at the Till rate (# 10-10076, doc. # 33; # 10-10325, doc. # 32).

The Supreme Court in Till noted that chapter 13 plans that "provide for installment payments over a period of years rather than a single payment . . . must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim." Till, 541 U.S. at 469. The Supreme Court found that, because "[a] debtor's promise of future payments is worth less than an immediate payment of the same total amount," plans that provide for installment payments must include payments of interest at the national prime rate, plus a risk factor adjustment. Id. at 474, 479–80.

11

Here, both Debtors' amended plans propose to pay the Bank by installment payments over a period of years, without interest (# 10-10076, doc. # 25; # 10-10325, doc. # 24). As such, the Debtors' amended plans fail to offer the Bank payment of the total present value of its claims. See Till, 541 U.S. at 469, 479–80. Accordingly, the Bank's objection to confirmation with respect to interest is sustained. The Court shall enter an order denying confirmation of the current plans and allowing the Debtors an opportunity to file second amended plans that provide for payment of interest on the Bank's claims consistent with Till.

  *C.*  *The Record is Insufficient to Make a Determination Regarding Equal Monthly Payments*

Debtor Jean Ann LaVictoire's amended plan provides that, inter alia, she shall pay to the Trustee $186.25 per month for 60 months, plus $10,000 from the sale or finance of property by June 17, 2015, and that she shall pay $9,528.85 to the Bank without interest, by payments through the plan of $158.81 per month for 60 months (# 10-10076, doc. # 25). Debtor Ronald Joseph LaVictoire's amended plan provides that, inter alia, he shall pay to the Trustee plan payments of $100 per month for 60 months, plus $15,150 from the sale or finance of real estate by an unspecified date, and that he shall pay $17,700 to the Bank without interest, by payments through the plan of $295 per month for 60 months (# 10-10325, doc. # 24). The Bank argues that both amended plans fail to provide for payment of the Bank's claims in equal monthly amounts as required by § 1325(a)(5)(B)(iii)(I) (# 10-10076, doc. # 33; # 10-10325, doc. # 32).

Section 1325(a) provides, in relevant part, that a court shall confirm a plan if:

>  (5) with respect to each allowed secured claim provided for by the plan—
>  . . .
>   (B)
>   . . .
>    (iii) if—
>     (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts . . ..

11 U.S.C. § 1325(a)(5)(B)(iii)(I).

Here, although the Debtors' amended plans provide for the sale of property, they do not specify which property is to be sold, how the proceeds will be disbursed, or, in the case of the amended plan filed by Mr. LaVictoire, the date by which the proceeds will be paid into the plan (# 10-10076, # 25; # 10-10325, doc. # 24). Further, there is nothing in the record specifying the order in which the secured creditors, including the Bank, are to be paid. Without this information, and based upon the Court's findings avoiding the Bank's lien in Mrs. LaVictoire's case except to the extent of $10,431.76 and in Mr. LaVictoire's case except to the extent of $17,700 (see § I.C, supra) and sustaining the Bank's objection

based upon the amended plans' failure to provide interest at the Till rate (see § II.B, supra), the record is insufficient to make a determination at this time as to whether the Debtors will be paying the Bank through equal monthly payments. Accordingly, the Court shall enter an order directing the Debtors to supplement the record to specify the following:

(i)     which property they propose to sell;

(ii)    how the proceeds will be disbursed;

(iii)   the date by which the proceeds will be paid to the Trustee; and

(iv)    the order in which the secured creditors, including the Bank, are to be paid.

The Court will schedule the matters for continued confirmation hearings to address both any supplement the Debtors file before then and the Bank's objection regarding the timing and amount of periodic payments.

## CONCLUSION

For the reasons set forth above, with respect to the Debtors' motions to avoid lien, the Court finds that the fair market value of the Property is $175,000, with each Debtor having an undivided, one-half interest in the Property with a value of $87,500, and that each Debtor is entitled to claim a homestead exemption in the amount of $62,500. The Court overrules the Bank's objections to the Debtors' motions to avoid lien and grants the Debtors motions to avoid lien to the extent provided in this decision.

With respect to the Bank's objections to confirmation of the Debtors' amended plans, the Court overrules the Bank's objections to confirmation on the bases that the amended plan relies upon an invalid assumption as to the extent to which the Debtors may avoid the Bank's judicial lien, § 1322(b) prohibits the Debtors from modifying the Bank's claim, and Debtor Ronald Joseph LaVictoire lacks regular income to fund his plan under §§ 101(30) and 109(e). The Court sustains the Bank's objection to confirmation on the basis that the amended plans fail to provide for payment of interest on the Bank's claims at the Till rate. The Court finds that the record is insufficient to make a determination as to the Bank's objection based on the Debtors' alleged failure to make payments on the Bank's claims in equal monthly amounts as required by § 1325(a)(5)(B)(iii)(I).

This memorandum constitutes the Court's findings of fact and conclusions of law.

_____
March 29, 2011                                      Colleen A. Brown
Burlington, Vermont                                 United States Bankruptcy Judge